FILED
2008 MAY 28 P 1:54
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | | |
| ALL CASES IN WHICH ROBIN L. MUSHER IS COUNSEL OF RECORD, | : : | Misc. No. 05-00202/TPA Chapter 13 |
| RISHOR SIMONE, *Movant*, v. NO RESPONDENT. | : : : : : : | Related to Doc. Nos: 148, 153, 164 |

*Appearances*: Gary J. Simone, Esq., for the Movant
John E. Quinn, Esq., for Respondents Robin L. Musher, a/k/a Robin L. Grassel and Robin L. Grassel, LLC

## MEMORANDUM OPINION

Presently pending before the Court is the ***Motion for Approval and Payment of Professional Fees in Chapter 13 Cases and Expenses Application Filed on Behalf of Rishor Simone Pursuant to Court Order Dated August 20, 2007*** ("Fee Application") filed at Document No. 148.[1] In the *Fee Application,* the law firm of Rishor Simone is seeking attorney fee compensation and expense reimbursement in the total amount of $14,362.43 in connection with its

---

[1] The *Fee Application* was filed pursuant to the Orders dated September 8, 2005 and March 21, 2006, Document Nos. 32 & 63 in *Winnecour v. Musher*, Adv. No. 05-02900 (*In re Weber*, Case No. 02-32390).

1

representation of Chapter 13 debtors in certain of the 226 pending cases [2] in which it was appointed substitute counsel due to the misconduct of prior counsel.

Because prior counsel's misconduct was discovered while a number of her Chapter 13 cases remained open, and periodic fees were being paid to her pursuant to confirmed Chapter 13 plans, the Court froze future payment of all of her previously-earned fees. These funds were set aside in an account called the "Musher Trust" to be used for payment of, among other things, any future attorney fees expended in making the affected Chapter 13 debtors whole.[3] It is from the Musher Trust that Rishor Simone seeks payment.

Respondents Robin L. Musher, a/k/a Robin L. Grassel and Robin L. Grassel, LLC (collectively "Musher"), the prior counsel whose misconduct set these events in motion, filed ***Objections to Fee Applications*** ("Objections") at Document No. 153 opposing a number of the

---

[2] The following cases are involved in the *Fee Application*: (1) Toy, Case No. 01-23783-JKF; (2) Strouse, Case No. 02-27615-JKF; (3) Johnson, Case No. 02-28720-JKF; (4) Bobich, Case No. 02-31272-TPA; (5) Moore, Case No. 03-23090-TPA; (6) Hall, Case No. 03-28969-JAD; (7) Konyha, Case No. 03-34193-MBM; (8) Bergman, Case No. 04-21412-MBM; (9) Novoselac, Case No. 04-23784-JAD; (10) Bova, Case No. 04-32917-JKF; (11) McCoy, Case No. 04-32927-TPA; (12) Drewery, Case No. 01-27586-JAD; (13) McCullough, Case No. 01-32415-JKF; (14) Watt, Case No. 02-30267-JKF; (15) Clark, Case No. 02-30735-JAD; (16) Gennaro, Case No. 07-20014-JKF; (17) Orris, Case No. 04-27257-JKF; and, (18) Cordes, Case No. 04-25372-TPA.

[3] The Musher Trust originated with the August 11, 2005 and September 8, 2005 Orders filed in *Winnecour v. Musher,* Adv. No. 05-2900 (*In re Weber*, Case No. 02-32390-MBM) wherein the Chapter 13 Trustee was authorized to freeze all further distributions to Musher and establish an escrow account to receive the payments that would otherwise have gone to Musher. Specifically, the September 8, 2005 Order imposed a trust on the escrow account and the Chapter 13 Trustee was designated as "trustee" for purposes of administering the fund created, in part, to pay substitute legal counsel for services rendered to debtors formerly represented by Musher in all of her pending cases. *See Orders of August 11, 2005,* Document No. 21, *September 8, 2005*, Document No. 32, and *March 21, 2006*, Document No. 63, entered in Adv. No. 05-2900. The payment terms of the trust provided only for payment of future attorney fees related to services Musher agreed to perform, but as a result of her misconduct, would be unable to perform. Upon conclusion of all pending cases the remaining balance in the Musher Trust, if any, would be paid to Musher. As of April 28, 2008, $46,583.51 in funds remained available in this regard from the total $101,931.75 of fees collected. The term "Musher Trust" is used throughout this Opinion to identify this special fund even though the trust was terminated by Order dated April 25, 2007. At that time the "trust" fund came under the direct control and supervision of the Court following the Chapter 13 Trustee's complaints that her office was overwhelmed by the record keeping responsibilities imposed by the Court to assure proper accountability in each of the then-pending cases. *See Trustee's Motion for Reconsideration*, Document No. 117 filed on April 20, 2007 and the *Order dated April 25, 2007* granting the *Motion* filed at Document No. 122.

specific fee requests claimed in the *Fee Application*. Included prominently among the *Objections* by Musher is the contention that in certain of the cases the fees being sought by Rishor Simone should not be paid from the previously escrowed funds placed into the Musher Trust for this purpose. Musher claims that Rishor Simone should instead be required to look to the respective debtor for payment by filing an "independent and separate fee application" assessing each, individual debtor for the "additional" fees claimed. Although not specifically stated, the clear implication of the *Objections* is that Musher, not Rishor Simone, is entitled to these "claimed" funds from the Musher Trust. *See also Reply to the Chapter 13 Trustee's Response to Objections to Accuracy of Data in Spreadsheet Originally Filed by Respondent,* Document No. 164 (setting forth Musher's claim to entitlement to funds from the Musher Trust).

On December 20, 2007, the Court held a hearing on the *Fee Application* and *Objections* at which time it raised the issue of whether Musher had any basis for objecting to payment of further fees from the Musher Trust in light of her failure to comply with the notice requirements set forth in *In re Berg,* 356 B.R. 378 (Bankr. E.D. Pa. 2006). With the consent of Musher at that hearing and by Order dated December 21, 2007 at Document No. 165, the Court directed the payment of $10,000.00 to Rishor Simone "on account" toward the total fees sought in the *Fee Application.* The Court further directed Rishor Simone to "review the [Fed.R.Bankr.P.] *2016 Statements* of the cases listed in the subject *Fee Application*" and submit a report to the Court as to its findings.[4]

---

[4] *11 U.S.C. § 329(a)* requires any attorney who represents a debtor in a bankruptcy case to file a statement with the court of the compensation paid or agreed to be paid for services rendered or to be rendered by the attorney. This Bankruptcy Code requirement is implemented through *Fed.R.Bankr.P. 2016(b)*, hence the mandated document is typically referred to as a *2016 Statement.*

3

The *Report of Review of 2016 Statements Pursuant to Order of the Bankruptcy Court Dated December 21, 2007* ("Report") at Document No. 171 was filed by Rishor Simone on January 11, 2008. According to the *Report,* none of the *2016 Statements* filed by Musher in the cases at issue included an exclusion or carve-out of services indicating that the identified flat fee to be paid to Musher was limited in any fashion to certain, identified services related to the bankruptcy thereby allowing her to seek additional fees for work beyond the covered services. In other words, by their literal terms, the *2016 Statements* filed by Musher agreed that the flat fee paid by the debtors would cover all attorney fees incurred by the respective debtor for all aspects of the bankruptcy case.

In response to the *Report,* Musher acknowledged that the *2016 Statements* she filed did not contain any carve-out provisions. However, Musher provided copies of engagement letters signed by clients from 11 of the 18 cases at issue.[5] Musher contended that, notwithstanding the *2016 Statements*, these engagement letters provide a basis for her to seek additional fees because they preserved her right to do so. *See Response to Report of Gary H. Simone, Esquire of his Review of 2016 Statements* ("Response"), Document No. 176.

Musher also alleged that she had not received fees in any of the subject cases beyond those fees identified in the respective *2016 Statements*. *Id.* Attorney Simone then filed a brief reply in which he pointed out that the Chapter 13 Trustee's web site revealed that in six (6) of the subject cases Musher had been paid more in fees than is shown on the respective *2016 Statement*, for a total

---

[5] Musher supplied engagement letters for the following cases: Strouse, Bobich, Moore, Konyha, Bergman, Novoselac, Bova, Watt, Clark, Orris and Cordes.

"overpayment" of $5,859.48.[6]  *See Reply to the Response of Gary H. Simone, Esquire of His Review of 2016 Statements,* Document No. 182.  Musher has not disputed this allegation.

For several reasons the Court will deny the pending *Objections*, grant the *Fee Application*, and direct payment of the balance of fees owed to Risher Simone.

In the seven (7) cases for which Musher has not produced engagement letters, contrary to Musher's request,  the Court will not presume there ever was a written communication to the client that included a clear carve-out provision.  As a general matter, in connection with any legal representation of a client by an attorney practicing in Pennsylvania, the attorney is required to communicate the basic rate of the fee and other terms of compensation to the client in writing if the attorney has not previously represented the client on a regular basis.  *See Pa.R.P.C. 1.5(b).*  In bankruptcy, the scrutiny of attorney fee matters is further heightened, with judicial oversight of the process.  *See, e.g., 11 U.S.C. §330* (procedure for court to award professional fees and expenses); *L.R. 2016-1(B)* (no compensation or expense allowed to any professional except on stated conditions).  *See also In re Mayeaux*, 269 B.R. 614, 628 (Bankr. E.D. Tex. 2001) ("The honest and comprehensive disclosure of compensation payments plays such a vital role in maintaining the integrity of the bankruptcy system that a bankruptcy court is compelled to enforce these disclosure provisions in an aggressive manner, even when the underlying case has been subsequently

---

[6]  The subject cases wherein Musher has been paid more than as shown on her *2016 Statements* are:

| Case | 2016 Statement | Amount Received |
|---|---|---|
| Toy | $700.00 | $3,313.50 |
| Strouse | $1,000.00 | $1,185.85 |
| Johnson | $1,300.00 | $1,632.32 |
| Hall | $1,500.00 | $2,903.90 |
| Novoselac | $1,500.00 | $1,593.25 |
| McCoy | $1,500.00 | $2,730.66 |

dismissed."). If the Court were simply to presume that Musher had provided a written fee engagement letter in these seven cases because that was her normal practice it would eviscerate important client safeguards. It is incumbent on counsel to maintain these records if she wishes to obtain the benefit of them. Therefore, in the above referenced seven cases, there is simply no basis for an award of any further fees to Musher.

Of the 11 cases where Musher has produced engagement letters, the Court finds seven of them to be vague and unclear as to the nature of any proposed carve-out for future, unanticipated services.[7] A representative sample of the relevant language from one of these letters is as follows:

> My fee for representing you in this matter is Two thousand Dollars ($2,000.00). In return I will prepare your petition, schedules, and Chapter 13 plan. I will also represent you at the Meeting of Creditors, which occurs approximately 45-60 days after your initial filing. <u>This fee also includes work for one additional Bankruptcy matter.</u> However, if any additional work or court appearances are required I will submit a fee application to the Court for approval.

*In re Moore*, Case No. 03-23090, engagement letter, *see Response*, Exhibit A (emphasis added).

The highlighted language raises many questions: What kind of "matter" is carved out? What is the scope of the "matter" and who determines that scope? Who picks the additional "matter" that is included within the stated flat fee? Given the vague language of the engagement letters, and construing the documents most favorably to the non-drafters, *i.e.*, the debtors, the Court

---

[7] The seven cases with vague and unclear engagement letters are: Moore, Bergman, Konyha, Novoselac, Bova, Orris, and Cordes.

is not willing to interpret these engagement letters as effectively setting forth an enforceable carve-out of services that would sufficiently inform the clients and serve as a basis for Musher to seek additional fees. *See, e.g.*, *Pa.R.P.C. 1.2(c)* (lawyer may limit scope or representation if the limitation is reasonable under the circumstances and the client gives informed consent); *Dardovitch v. Haltzman*, 190 F.3d 125, 141 (3d Cir. 1999) (applying rule of *contra preferentem* to fee agreement between attorney and client); *In re Castorena*, 270 B.R. 504, 531 (Bankr. D. Idaho 2001) (limitation of services must be "carefully considered and narrowly crafted and be the result of educated and informed consent.").

That leaves only four cases in which Musher has produced engagement letters that could arguably be construed to authorize payments above the flat amount set forth in the letters (Strouse, Bobich, Watt, and Clark). However, as previously indicated, in those cases as well, Musher filed *2016 Statements* that state the identified flat fee was for *all* work related to the bankruptcy. In *In re Berg, supra,* the court found that an attorney representing a debtor in a Chapter 13 case has a continuing duty to disclose all compensation paid or agreed to be paid by the debtor with the *2016 Statement* serving as the vehicle for that disclosure. 356 B.R. at 380-82 (quoting *In re Fricker*, 131 B.R. 932 (Bankr. E.D. Pa. 1991)). The *Berg* court found the *2016 Statement* to be so central to this duty that the filing of the *2016 Statement* and any required amendment thereto were "an absolute prerequisite" to receipt of compensation by counsel for a Chapter 13 debtor. 356 B.R. at 381.

The *Berg* court also rejected the argument that the undetected failure to meet the requirements of *Rule 2016* by other attorneys practicing in the court should somehow excuse a failure that has been detected. The court specifically noted that:

> "failure to monitor compliance is not an invitation to ignore the supplementation requirement. When, as here, a breach is uncovered, it will be dealt with appropriately." *Id* at 382, n.4.

Finally, the *Berg* court held that the decision as to the extent of any sanction to be imposed for attorney transgressions of the compensation disclosure requirement lies within the sound discretion of the bankruptcy court. *Id.* at 383-84.

This Court fully agrees with the principles set forth in *Berg*.[8] When those principles are applied to the facts of this case it becomes clear that Musher cannot recover any additional fees in the four remaining cases at issue because the *2016 Statements* filed by her in those cases do not disclose a work carve out or preserve the possibility that she might file a subsequent fee application for fees beyond the flat amount set forth in the *2016 Statement*. Under the circumstances, even the existence of "arguably" helpful engagement letters does not thereby entitle her to the disputed fees.

Nor is there any possibility that Musher could amend or supplement the *2016 Statements* at this point to "cure" them and allow her to seek additional fees. *Fed.R.Bankr.P. 2016(b)* mandates that a supplemental statement shall be filed within 15 days after any payment or agreement not previously disclosed. Here, Musher knew at the time she provided fee engagement letters to the clients that she might at some point seek additional fees. If she inadvertently omitted that information from the *2016 Statement* she originally filed, at the very least she had a duty to supplement it within 15 days thereafter.

---

[8] The application of the *Berg* principles in this Court is not something newly-announced by this Opinion. For at least a year, the Judges of this Court have made known to members of the Bar that the importance and requirements of *2016 Statements* would not be ignored. *See, e.g., Order of May 21, 2008*, Document No. 83, in *In re Adkins*, Case No. 04-35223 (Judge Jeffery A. Deller).

8

Even if this Court were to give Musher the benefit of every possible doubt, her duty to supplement would have arisen certainly no later than the time she first performed legal work for the clients for which she knew she would seek additional fees. Since Musher has been "off the case" for roughly three years, she obviously has not performed any such legal work since at least that time, hence any possibility of her filing an effective supplement to the *2016 Statement* has long since expired.[9]

There is little doubt that other attorneys practicing in this District have filed *2016 Statements* that failed to disclose carve-outs yet were nevertheless able to successfully petition for additional fees later in the case because of the lack of resources necessary to fully monitor compliance with the disclosure requirement.[10] However, the failure to detect any such other transgressions will not provide an excuse for Musher's failure to adequately disclose as has been discovered here. Disgorgement of the fees previously received by Musher could be justified as an appropriate sanction in this case. *See Berg*, 356 B.R. at 384 (disgorgement can be proper even though the failure to comply resulted from negligence or inadvertence).

---

[9] In the past this Court has permitted late "amendments" to *2016 Statements* and allowed attorneys to seek additional fees when there was a clear, pre-existing fee agreement with the client that would support additional fees *and* where the client consented in writing to such an amendment. This is not an option for Musher in the present case. As noted by the Court at the oral argument, in prior instances where late amendment has been allowed, the attorney and client have enjoyed an existing and ongoing relationship, whereas, Musher has not represented any of these clients for a number of years now. At the April 17, 2008 argument on this matter the Court expressed extreme scepticism that Musher could ever obtain valid client consent in these circumstances. Counsel for Musher did not disagree. This "acknowledgment" is further demonstrated by the absence of any subsequent filing by Musher manifesting the consent of her former clients in any of the affected cases.

[10] Counsel for the Chapter 13 Trustee candidly acknowledged that, at least in the past, her office had not routinely monitored all fee applications to see if the *2016 Statement* on file in the case would support the attorney's right to seek additional fees. Indeed, Musher herself seems to have been the beneficiary of this lack of oversight. *See* fn. 5*, supra,* and accompanying text.

Although mindful of the burden on the Court which has resulted from Musher's original misconduct that led to the appointment of Rishor Simone in the first place, the Court will not take the severe step of requiring disgorgement. Instead, the Court concludes that a denial of any further fees to Musher is an appropriate sanction in this case for her failure to properly disclose. The Court is further hopeful that this decision will serve as a cautionary warning for all bankruptcy counsel practicing in this District as to their obligations under *Rule 2016* and the *Pennsylvania Rules of Professional Conduct* concerning client fee arrangements.

An appropriate Order shall issue.

Dated: May 28, 2008

Thomas P. Agresti
United States Bankruptcy Judge

Case Administrator to mail to:
    Ronda Winnecour, Esq.
    Richard J. Bedford, Esq.
    3250 USS Tower
    600 Grant Street
    Pittsburgh, PA 15219

    John E. Quinn, Esq.
    Evans, Portnoy & Quinn
    One Oxford Centre, 36th Floor
    Pittsburgh, PA 15219-6401

    Gary J. Simone, Esq.
    101 E. Diamond Street - Suite 208
    Butler, PA 16001

    Joseph S. Sisca, Esq.
    Office of the U.S. Trustee
    970 Liberty Center
    1001 Liberty Avenue
    Pittsburgh, PA 15222

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| ALL CASES IN WHICH ROBIN L. MUSHER IS COUNSEL OF RECORD, | : : | Misc. No. 05-00202/TPA Chapter 13 |
| RISHOR SIMONE, *Movant*, v. NO RESPONDENT. | : : : : : : | Related to Doc. Nos: 148,153, 164 |

## ORDER OF COURT

**AND NOW**, this **28th** day of **May, 2008**, in accordance with the foregoing *Memorandum Opinion* and for the reasons stated therein,

It is hereby ***ORDERED, ADJUDGED and DECREED*** that the ***Motion for Approval and Payment of Professional Fees in Chapter 13 Cases and Expenses Application Filed on Behalf of Rishor Simone Pursuant to Court Order Dated August 20, 2007*** ("Fee Application") filed at Document No. 148 is ***GRANTED*** since the fees are disbursements of the kind and nature originally contemplated by the prior Orders of this Court which created the "Musher Trust" and therefore, the relief requested in the ***Objections to Fee Applications*** as filed by Respondents Robin L. Musher, a/k/a Robin L. Grassel and Robin L. Grassel, LLC at Document No. 153 is ***DENIED***.

It is **FURTHER ORDERED** that the Clerk is directed to immediately make payment to Rishor Simone from the "Musher Trust" in the net amount of $4,362.43, representing the total amount remaining due for fees and expenses sought in the *Fee Application*, that is $14,362.43, after credit of $10,000 previously paid by the Clerk to Rishor Simone pursuant to this Court's December 21, 2007 Order.

*/s/ Thomas P. Agresti*
Thomas P. Agresti
United States Bankruptcy Judge

Case Administrator to mail to:
    Ronda Winnecour, Esq.
    Richard J. Bedford, Esq.
    3250 USS Tower
    600 Grant Street
    Pittsburgh, PA 15219

    John E. Quinn, Esq.
    Evans, Portnoy & Quinn
    One Oxford Centre, 36th Floor
    Pittsburgh, PA 15219-6401

    Gary J. Simone, Esq.
    101 E. Diamond Street - Suite 208
    Butler, PA 16001

    Joseph S. Sisca, Esq.
    Office of the U.S. Trustee
    970 Liberty Center
    1001 Liberty Avenue
    Pittsburgh, PA 15222